# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOYCE SAGI                          :
                                    :
    v.                              :          CIVIL ACTION NO. 19-5224
                                    :
J AND G SPAS, LLC                   :

---

McHUGH, J.                                                      October 6, 2021

## MEMORANDUM

This matter involves claims of age and disability discrimination, brought by an assistant manager at a spa, employed there for approximately 18 months until she was terminated.  Plaintiff alleges that spa management favored younger employees but cannot point to specific examples of discrimination or identify comparators that received better treatment based on age.  Plaintiff's disability claims are similarly deficient: her employer accommodated Plaintiff following rotator cuff surgery, and she does not point to any antagonistic comments or other evidence suggesting that her termination was motivated by disability.  Although the relationship grew contentious over time, the conduct that Plaintiff points to as unfair is not unlawful under the statutes whose protection she invokes.  Because a reasonable jury could not find that Plaintiff was terminated due to discrimination or retaliation, Defendant's motion for summary judgment must be granted in full.

I.       Factual and Procedural Background

Joyce Sagi brings claims for age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. §§ 951 *et seq.*, as well as claims for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the PHRA.  *See* Compl. ¶¶ 45, 49, 57, 67, 78, 81, ECF 1.  Plaintiff also asserts a claim under

Pennsylvania law that she was wrongfully terminated for "attempting to file a worker's compensation claim." *Id*. ¶ 87.

Defendant J&G Spas owns and operates a Hand & Stone Massage and Facial Spa franchise located at 2500 Grant Avenue, Philadelphia, Pennsylvania. *See* Pl.'s Opp'n Def.'s Mot. Summ. J. Ex. A, at 2, ECF 16-2. In September 2017, at age 57, Plaintiff was hired by J&G as an assistant manager.[1] *See* Sagi Dep. 29:14-17, March 10, 2021, ECF 15-3; Pl.'s Opp'n Def.'s Mot. Summ. J. Ex. A, at 2. On April 19, 2018, Plaintiff was fired by the spa's manager, Corin Barlow. *See* Sagi Dep. 29:21-24. Prior to beginning work with Defendant, Sagi was involved in a car accident and tore her rotator cuff. *Id.* at 7:20–8:6. She informed J&G that she would require leave to have corrective surgery, and they accommodated her request. *Id.* at 8:6-20. She commenced employment in September 2017, had rotator cuff surgery on October 24, 2017, *see* Def.'s Mot. Summ. J. Ex. D, at 2, ECF 15-6, and returned to work around Thanksgiving of 2017. *See* Sagi Dep. 8:23-24. J&G then arranged Sagi's schedule so she could attend physical therapy in the morning and work in the evening. *Id.* at 9:7-10; 107:12-19.

Ms. Sagi received generally favorable reviews during her tenure with J&G. In a January 18, 2018 performance review, Plaintiff received five out of five in ten categories, four out of five in five categories, three out of five in three categories, and two out of five in one category, with five being the highest ranking. *See* Def.'s Mot. Summ. J. Ex. C, at 2, ECF 15-5. But Sagi consistently struggled with the spa's computer system, despite receiving training on multiple occasions. *See* Barlow Dep. 29:21-24; 30:10-15, Jun. 18, 2021, ECF 15-4. Her January evaluation noted that "additional training" on the computer interface was required. *See* Def.'s Mot. Summ. J. Ex. C, at 2. Defendant used its computer system for "all operations of the business" including

---

[1] Plaintiff spent much of her career as a noncommissioned officer with the Rutgers Police Department. *See* Sagi Dep. 15:15-17.

booking client appointments, sales, and recording employee time.  Barlow Dep. 29:1-4.  Ms. Sagi doesn't dispute her technical shortcomings, noting that "I'm older, I'm slower, I don't do the computers as quickly."  Sagi Dep. 113:20-114:3.   Her deficient computer skills also appear to have contributed to a decline in her membership sales; the spa associates (who were supervised by Sagi) could check members out more quickly on the computer, and Sagi, therefore made fewer sales.  *Id.*

The parties also do not dispute that Ms. Sagi had a poor relationship with one of her subordinates, Sarai Knox.  Knox, who is African American and in her 20s, worked as a spa associate and reported to Sagi when Plaintiff was on-duty.  Sagi Dep. 34:13-16; 47:5-11.  Plaintiff and Knox had ongoing disputes while they worked together.  *Id.* at 32:23-33:1.   In one instance, Knox told Plaintiff to go "F" herself, and separately told Plaintiff to "stop power tripping."  *Id.* at 35:16-18; 46:21-22.  Sagi repeatedly complained about Knox to Barlow and took issue with Knox's refusal to respect her authority.  *Id.* at 33:23–34:9.

During the morning of April 16, 2018, Sagi emailed Barlow requesting a meeting and asked that Barlow discipline Knox for "dereliction of duties, verbal abuse, [and] ignoring or refusal to follow the direction of her immediate supervisor while on duty at NE."  Pl's Opp'n Def.'s Mot. Summ. J. Ex. D, at 30.  The previous evening, Plaintiff had asked Knox to clean the bathroom and Knox had responded, "I don't need to listen to you, you ain't my Mother and I don't give a fuck what you say."  *Id.*  Plaintiff, Barlow, and Knox met, and both Knox and Sagi raised their voices. Sagi Dep. 148:10-13.   Barlow refused to discipline Knox during the meeting and Plaintiff expressed her frustration that Barlow was "siding with Sarai."  *Id.* at 149:1-5.  Knox left the meeting and then spoke to her friend, Chantal Hardy, an African American massage therapist in her 30s.  *Id.* at 49:22-24.

Shortly after, Ms. Sagi passed Hardy in the hallway, and Hardy's shoulder rammed into Sagi's shoulder. *Id.* at 49:24–50:3. The parties dispute whether the contact was accidental. *Id.* at 69:1-23. Sagi immediately wanted to file an incident report and call the police, but Barlow asked her to "keep it informal" and said they would deal with it the next day. *Id.* at 54:18-22. Sagi was originally scheduled to end her physical therapy for her rotator cuff in April 2018, but following the incident with Hardy, she needed to undergo additional physical therapy and was not discharged from therapy until June 4, 2018. *Id.* at 109:18-20; 109:10-15; 200:17-23.

Subsequently, Barlow asked Plaintiff if "[she] was going out on workman's comp?" *Id.* at 56:3-5; Def.'s Mot. Summ. J. Ex. J. at 2, ECF 15-12. Sagi responded that she would not require worker's compensation, as she could continue to work nights and attend physical therapy during the day. Sagi Dep. 56:12-16. Plaintiff also emailed Barlow on April 17, stating that she would "welcome an opportunity to discuss your decision to support a new 19-year-old [spa associate] who you allowed to manipulate the Management of NE HnS by not only condoning her actions, you empowered her." Pl's Opp'n Def.'s Mot. Summ. J. Ex. D, at 30. She also stated that "[i]f it is your intention to get me to resign, I wish you would have been open and honest." *Id.* She requested a meeting with Barlow and the owners of the spa. *Id.*

Plaintiff was terminated on April 19, 2018. Sagi Dep. 29:21-24. In an email, Barlow recounted that "[p]er our phone conversation today, [Barlow and the spa owners] have decided that it is best that we part ways." Pl's Opp'n Def.'s Mot. Summ. J. Ex. E, at 33. Sagi believes she was terminated because she filed a report following the incident with Ms. Hardy in the hallway. *See* Sagi Dep. 137:13-22.

On April 26, 2018, Sagi filed for workmen's compensation. *Id.* at 204:18-20. Originally, she had not planned on pursuing compensation as she "didn't need to be out … [she] just needed

to go to physical therapy to get [her] shoulder better." *Id.* at 60:21–61:4.  In October 2019, Plaintiff

was involved in a serious car accident. *Id.* at 10:10-11.  Unfortunately, she is permanently disabled

due to the injuries to her back and is receiving Social Security Disability.  *Id.* at 10:18-23.

## II.     Standard of Review

This Motion is governed by the well-established standard for summary judgment set forth

in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23

(1986).

## III.    Discussion

### A.  Age Discrimination Claims

Under the ADEA, an employer may not "fail or refuse to hire or to discharge any individual

or otherwise discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

To show a prima facie case of age discrimination[2] under the ADEA and the PHRA, the plaintiff

must show that she is (1) at least forty years old; (2) that she suffered an adverse employment

action; (3) that she was qualified for her position; and (4) that she was "ultimately replaced by

another employee who was sufficiently younger so as to support an inference of a discriminatory

motive."  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).  *See*

*also Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (applying ADEA standard to PHRA

claims).  Where a plaintiff is not directly replaced, she may proffer other facts that suggest a

defendant's consideration of impermissible factors.  *See Willis*, 808 F.3d at 645.  Because Plaintiff

---

[2] A plaintiff may prove age discrimination through direct or indirect evidence.  *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998).  Where a plaintiff offers indirect evidence in support of her claims, the *McDonnell Douglas* burden-shifting framework applies.  *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994).  Because Sagi has offered circumstantial evidence of discrimination, I will apply the *McDonnell Douglas* framework.

has demonstrated the first three elements of her *prima facie* case,[3] the issue here is whether she has presented evidence raising an inference of age discrimination.

Ms. Sagi has failed to create a genuine issue of material fact as to whether she was discriminated against based on age. At her deposition, she testified that she couldn't recall "any exact incident[s], times, and dates" of age discrimination, vaguely claiming instead that she personally "felt it was the culture of the business …" Sagi Dep. 151:24–152:8. When she was asked to assess the treatment of three younger employees—Donna Survillo, Megan Thompson, and Belkys Diaz—Sagi either could not identify instances of favorable treatment or candidly attributed differences in treatment to performance-related factors. For example, in Plaintiff's view, Survillo, an assistant manager at a different location, was treated better "only because of her longevity and probably knowing more." *Id.* at 83:17-24. Thompson, a spa associate, received more favorable treatment "because she was good at computers." *Id.* at 85:15. And as for Diaz, Plaintiff testified that she "d[idn't] know that [Diaz] was treated better." *Id.* at 87:16-17. Without evidence of age-related remarks or favorable treatment of younger comparators for reasons of age, Plaintiff has failed to raise an inference of discrimination and Defendant would be entitled to summary judgment as a matter of law. *Wiest*, 812 F.3d at 328 (stating that "conjecture and speculation will not create a genuine issue of material fact sufficient to withstand the grant of summary judgment").

As the party opposing summary judgment, Sagi must point "to sufficient cognizable evidence to create material issues of fact concerning every element as to which the nonmoving

---

[3] Plaintiff was 57 when she was hired, and her firing suffices as an adverse action. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (defining an adverse action as one that results in "a significant change in employment status, such as hiring [and] firing"). Defendant does not challenge the first three prongs of Plaintiff's *prima facie* case. *See* Mem. L. Supp. Def.'s Mot. Summ. J. 17 n.5, ECF 15-1.

party will bear the burden of proof at trial." *Simpson*, 142 F.3d at 643 n.3.  To support an inference of discrimination, Ms. Sagi highlights three examples from the record.  First, Plaintiff claims that she was terminated days after she complained about age discrimination and asks this Court to infer discriminatory animus from the timing of the complaint and her termination.  But this interpretation of the record is dubious; Plaintiff's emails on April 16, 2018 and April 17, 2018 express resentment that her disciplinary recommendations were not adopted but do not assert that her view was disregarded based on her age.[4]  *See* Pl's Opp'n Def.'s Mot. Summ. J. Ex. D, at 30. These emails, therefore, cannot reasonably be construed as complaints of bias, and fail to raise the inference that Plaintiff was fired for complaining about discrimination.  *See Barber v. CSX Distribution Services*, 68 F.3d 694, 702 (3d Cir. 1995) (holding that plaintiff's "general complaint of unfair treatment d[id] not translate into a charge of illegal age discrimination" under the ADEA).

Second, Plaintiff avers that "Ms. Barlow expressed that she favored the younger employees over Plaintiff and were entitled to the more favorable treatment because the manager-level staff were a dime-a-dozen." Pl.'s Mem. L. Resp. Opp'n Def.'s Mot. Summ. J. 9, ECF 16-1.  As support, Plaintiff cites her deposition, where she testified:

> I mean, one of the things that [Barlow] had said to me was that, you know, managers, spa associates, they are a dime a dozen. When it comes to massage therapists, they make the money, so we have to, you know, cut them a little extra slack or be nicer or more understanding.

Sagi Dep. 72:11-20.

This statement does not support an inference that Barlow favored younger employees over Sagi for two reasons.  First, the record is by no means clear how many of the massage therapists overall were younger than Plaintiff.  More importantly, the distinction being drawn was not based

---

[4] The sole reference to age is that "I'd welcome an opportunity to discuss your decision to support a new 19 year old SA who you allowed to manipulate the management of NE HnS." Pl's Opp'n Def.'s Mot. Summ. J.  Ex. D, at 30.

on age, but on the income-producing value of different categories of employees.  The services that customers seek at a spa are provided by its direct service employees like massage therapists.  It is rational and nondiscriminatory for a manager to make their contentment a greater priority than administrative personnel, even if coincidently the front-line workers are younger.

And finally, Plaintiff contends that "Ms. Barlow fostered an environment where younger employees were treated more favorably than older employees."  Pl.'s Mem. L. Resp. Opp'n Def.'s Mot. Summ. J. 10.  For this proposition, Plaintiff again invokes her own testimony that she:

> felt that it was the culture of the business that, if they were younger that they got along better, that there were no incidents whatsoever.  I really feel that it was because of my age and my disability that I was discriminated against.

Sagi Dep. 152:3-8.

Ms. Sagi's testimony does not create a genuine issue of material fact.  A dispute of fact is "genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Wiest*, 812 F.3d at 328.  When she was deposed, Plaintiff could not identify specific incidents of age-based animus or similarly situated comparators that received favorable treatment based on age.  Absent other evidence, Plaintiff's vague perception about a culture of discrimination within the business could not persuade a reasonable juror that her termination was based on her age.  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 646 (3d Cir. 2015) (a "passing reference to retirement age and [Plaintiff's] own belief that age discrimination occurred do not comprise sufficient evidence that similarly situated, substantially younger employees were more favorably treated, and therefore do not satisfy the fourth element of a *prima facie* case.").

Even assuming that Plaintiff could establish a *prima facie* case of age discrimination, a reasonable jury could not find that Defendant's proffered reasons for her termination were pretextual.  Once a plaintiff establishes a *prima facie* case, Defendant must answer with legitimate,

nondiscriminatory reasons for its action.  *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994);

*Simpson*, 142 F.3d at 644 (applying pretext analysis to ADEA claims).  Once Defendant meets this

"relatively light burden," the burden of production shifts back to the plaintiff who must show that

each of the employer's reasons are pretextual.  *Fuentes*, 32 F.3d at 763.  To demonstrate pretext

and defeat summary judgment, the plaintiff must then identify evidence "from which a factfinder

could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe

that an invidious discriminatory reason was more likely than not a motivating or determinative

cause of the employer's action."  *Id.* at 764.

  Defendant's proffered reasons for Plaintiff's termination include her lack of proficiency

with Defendant's computer system, which led to constant client booking errors, as well as her

antagonistic relationships with other J&G employees.  *See* Def.'s Mem. L. Supp. Mot. Summ. J.

13–15.  Even when the facts of this case are viewed in the light most favorable to the Plaintiff,

there is ample evidence in the record from which a factfinder could believe Defendant's articulated

reasons.  In her deposition, Ms. Sagi admitted that she struggled with Defendant's computer system

and that her lack of proficiency hindered her ability to make membership sales.  *See* Sagi Dep.

113:20-114:3. Sagi received poor ratings on her computer skills and does not dispute that she was

trained repeatedly.  *See* Def.'s Mot. Summ. J. Ex. C, at 2; Sagi Dep. 156:14–157:3.  And similarly,

by Sagi's own admission, she had a poor relationship with her subordinate, Sarai Knox, and

adopted an antagonistic management style, where she asked that Barlow discipline Knox for

"dereliction of duties, verbal abuse, [and] ignoring or refusal to follow the direction of her

immediate supervisor while on duty at NE."  Sagi Dep. 32:23-33:1; Pl's Opp'n Def.'s Mot. Summ.

J. Ex. D, at 30.  When her recommendations were not followed, Sagi again complained to Barlow

and attempted to escalate the situation to the owners of the spa.  *Id*.  Sagi's combative management

style, in combination with her technical shortcomings, resulting in lower membership sales, are legitimate, nondiscriminatory reasons for her termination.  Plaintiff has failed to point to record evidence from which a reasonable jury could find that the spa's reasons for termination were pretextual or find that termination was related to her age.

B. Disability Claims

Ms. Sagi also brings claims of disability discrimination under the ADA and the PHRA.  As part of her *prima facie* case, Plaintiff must demonstrate that "(1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination."  *Taylor v. Phoenixville School. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).  *See also Kelly*, 94 F.3d at 105 (applying ADA analysis to PHRA).  Defendant challenges the first and third elements of Plaintiff's *prima facie* case.  I reject Defendant's first argument because I conclude that there is a genuine issue of material fact as to whether Sagi was disabled.  I will nonetheless grant summary judgment because a reasonable juror could not conclude that Defendant fired Sagi due to her disability.

The ADA defines "disability" to include "(A) a physical or mental impairment that substantially limits one of more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).[5]  When determining whether an individual has a substantial impairment, courts conduct an individualized analysis and examine whether the plaintiff is limited in performing "a major life activity as compared to most people in the general population."  29 C.F.R. §§ 1630.2(j)(1)(iv); (ii).  Major

---

[5] Because I have determined that there is a question of fact as to whether Sagi was substantially impaired but have concluded that her termination was not related to disability, I do not analyze whether she has a record of such an impairment.

life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).

Plaintiff's physical therapy records raise a genuine question of fact as to whether she was disabled at the time of her termination.  Sagi was fired on April 19, 2018.  *See* Sagi Dep. 29:21-24.  On March 12, 2018, her physical therapist noted that Plaintiff's rotator cuff injury limited her ability to "perform these tasks: Carrying, Dressing, Donning/Doffing undergarments, Lifting Overhead, Overhead tasks."  Def.'s Mot. Summ. J. Ex. D, at 2.  She further observed that "Patient will benefit from skilled therapy to allow the patient to meet set functional goals."  *Id.*  And in a second report, dated April 13, 2018, the therapist noted that Plaintiff's deficits limited her "ability to perform these tasks: Carrying, Lifting overhead, Overhead tasks."  *Id.* at 4.

The ADA's regulations make clear that "'[s]ubstantially limits' is not meant to be a demanding standard."  29 C.F.R. §§ 1630.2(j)(1)(i).  Plaintiff's physical therapy records, which cover the time period directly preceding her termination, raise questions of fact as to whether Sagi could complete manual tasks that a person in the general population could perform.  *See Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 783 (3rd Cir. 1998).  The fact that Plaintiff could continue to perform her job duties with minimal accommodation does not negate her disability claim.  *See* 29 C.F.R. §§ 1630.2(j)(1)(viii) ("[a]n impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment"); *Mondzelewski*, 162 F.3d at 784 (stating that if a plaintiff is substantially limited in any of those major life activities other than work, the individual qualifies as "disabled" and the inquiry ceases).  For these reasons, genuine questions of material fact exist as to whether Sagi was disabled.

But even so, Sagi has failed to demonstrate a causal connection between her termination and her alleged disability. Plaintiff theorizes that the incident with Chantal Hardy aggravated Sagi's shoulder injury and that Defendant preemptively terminated her to avoid further accommodations. *See* Pl.'s Mem. L. Resp. Opp'n Def.'s Mot. Summ. J. 11. Plaintiff has made clear that her disability claim arises solely from Defendant's handling of the Hardy incident. *See* Sagi Dep. 137:20.

The record contains scant evidence from which a reasonable juror could conclude that Sagi's termination was related to disability. Plaintiff had her rotator cuff surgery in October, shortly after starting at the spa, *see* Def.'s Mot. Summ. J. Ex. D, at 2, and Defendant permitted her to take leave until around Thanksgiving 2017. *See* Sagi Dep. 8:23-24. Defendant also allowed Sagi to attend physical therapy in the morning and work in the evening. *Id.* at 9:7-10; 107:12-19. Plaintiff does not point to any evidence indicating that Defendant took issue with the scheduling accommodation. And when Barlow asked Sagi if she would require worker's compensation, Sagi emphatically responded that she would not. *See* Sagi Dep. 56:12-16. Plaintiff does not explain why Defendant would then suddenly take issue with the flexible work arrangement that had existed throughout Sagi's employment, and the record is devoid of any antagonistic comments regarding Sagi's disability. For these reasons, there is no genuine issue of material fact with respect to causation, and Defendant's motion for summary judgment will be granted.[6]

Plaintiff's "regarded as disabled" claim fails similarly on this ground. To make out a "regarded as" claim, Sagi must show she was subjected to a prohibited action "because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3)(A). Plaintiff has not offered

---

[6] As with her age discrimination claim, Plaintiff cannot show that Defendant's proffered reasons for her termination, namely her management style and her deficient technical skills, were pretextual. Defendant's explanations are supported by evidence in the record, and Plaintiff fails to point to evidence sufficient to rebut them.

any evidence regarding Defendant's perception about the severity of her condition. *See Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002) (noting that a court must find that a defendant regarded a plaintiff as disabled). And following the incident with Hardy, Plaintiff told Barlow that she would not require worker's compensation. *See* Sagi Dep. 56:12-16. To establish her "regarded as" claim, Sagi would need to demonstrate that Defendant took issue with its accommodations or that Defendant misbelieved Sagi's assessment of her own condition and fired her on that basis. Because Plaintiff has not pointed to any evidence in that vein, Defendant's motion for summary judgment will be granted.

### C.   Retaliation Claims

Sagi further asserts that she was retaliated against for her complaint of age discrimination. A plaintiff asserting an ADEA and PHRA retaliation claim must show "(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. School. Dist. Of Philadelphia*, 776 F.3d 181, 192–193 (3d Cir. 2015); *Burton v. Teleflex Inc.,* 707 F.3d 417, 432 (3d Cir. 2013) (treating plaintiff's PHRA claims as identical to her ADEA and Title VII claims).

Plaintiff's *prima facie* case fails as a matter of law because she cannot show that she engaged in protected activity. During her deposition, Ms. Sagi testified that she did not file a written complaint of discrimination during her employment at J&G. *See* Sagi Dep 123:1-4. Her retaliation claim, therefore, hinges on whether a reasonable juror would construe her emails on April 16, 2018 and April 17, 2018 as protected activities. When defining the scope of protected behavior, the Third Circuit has noted that a "general complaint of unfair treatment does not translate into a charge of illegal *age* discrimination." *Barber*, 68 F.3 at 702. In *Barber*, the

plaintiff sent a letter complaining that a "position was awarded to a less qualified individual," but the court held that this assertion did not "explicitly or implicitly allege that age was the reason for the alleged unfairness." *Id.* Plaintiff's emails are similar. Sagi had recommended that Barlow discipline Knox for insubordination, and her April emails to Barlow express frustration with Barlow's refusal to adopt her position. Only one email explicitly references age, insofar as Sagi takes issue with Barlow's decision to "to support a new 19 year old [spa associate] who you allowed to manipulate the Management of NE HnS …" Pl's Opp'n Def.'s Mot. Summ. J. Ex. D, at 30. However, Sagi's emails do not mention her own age and do not imply that Sagi's age was the reason for Barlow's refusal to discipline Knox. Her lament about callow youth does not go beyond a "general complaint of unfair treatment," and a reasonable juror could not find that it amounted to protected activity. *Barber*, 68 F.3 at 702. Defendant's motion for summary judgment will be granted.

    D. <u>Worker's Compensation Claim</u>

        Plaintiff's final contention is that she was fired in retaliation for pursuing a workmen's compensation claim. Under Pennsylvania law, termination of a worker for filing a claim for compensation is considered a violation of public policy, and therefore actionable. *See Shick v. Shirey*, 552 Pa. 590, 592 (1998). In evaluating such claims, the Supreme Court of Pennsylvania looks to whether the plaintiff's activity "was a substantial factor in [the employer's] decision to fire him." *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 306 (2005). Protected activities include workers filing or pursuing workers' compensation as well as a supervisor's refusal to dissuade a subordinate from seeking compensation. *Id.* at 306-307. But Pennsylvania courts have also emphasized that a claim will not succeed where an employer has a "separate, plausible, and

legitimate reason for the discharge." *Davenport v. Reed*, 785 A.2d 1058, 1064 (Pa. Commw. Ct. 2001).

Sagi puts forward the theory that "based on the temporal proximity of the termination to the injury report and the continued denial of eligibility for worker's compensation," Defendant terminated Plaintiff "before she had an adequate amount of time to determine the extent of her injury and whether or not she truly needed Worker's Compensation." *See* Pl.'s Mem. L. Resp. Opp'n Def.'s Mot. Summ. J. 13. But Plaintiff has testified that, when Barlow asked her directly whether she would be needing compensation, she responded "no," with the intention of continuing physical therapy instead. *See* Sagi Dep. 60:8-13. Sagi did not apply for compensation until after her employment with Defendant ended, *see* Pl.'s Opp'n Def.'s Mot. Summ. J. Ex. A, at 2, and her testimony suggests that she applied only because she was fired by Defendant. *See* Sagi Dep. 61:5-18. Defendant therefore lacked notice that Plaintiff planned to file for compensation, and a reasonable juror could not find that Plaintiff was terminated to deter her from filing a claim.

## IV.   <u>Conclusion</u>

For the reasons set forth above, Defendant's Motion for Summary Judgment will be granted, and Plaintiff's claims will be dismissed. An appropriate order follows.

      /s/ Gerald Austin McHugh
      United States District Judge